(Superior Court of Cincinnati.)
Special Term.

In the matter of the disposition of a certain fund to the amount of one thousand dollars now in the treasury of the Vine Street congregational church.

--------

Osman Sellew in 1886 conveyed to the Vine Street Congregational Church a house and lot on the following condition: "In case it shall be deemed best at any time in future to sell said premises, the proceeds arising from such sale shall not be used for the purpose of liquidating the debts of the church nor for the construction, repair or remodeling the present or any other church edifice; but the same shall be either re-invested in other property or securities, the income therefrom to be used for the benefit of said church, as the trustees thereof may think best. It being the purpose of this agreement to secure and preserve the principal of this gift intact and to provide that the income only arising from the same may and shall be used for the said church, and on failure of the trustees of said church to faithfully carry out and abide by the agreement above, the proceeds arising from the sale of said premises without interest and less any losses that may have occurred from poor investments shall revert to the grantor or his legal heirs."

Subsequently the trustees of the church leased the property with the privilege of purchase for $13,000 payable in annual installments of not less than $500. After two annual payments of $500 each the lessee abandoned the lease and conveyed her interest in the same to the lessor.

Held: That the $1,000 paid as above stated was not income, and therefore could not be expended by the trustees; but was principal, and became a part of the corpus of the trust.

--------

SMITH, J.

In accordance with the provisions

of section 5207, of the Revised Statutes of Ohio, the controversy arising in this matter has been submitted to me on the following agreed statement of facts:

*Agreed Statement of Facts.*

That on or about the 29th day of March, 1876, Osman Sellew presented to the Vine Street Congregational Church a piece of property described as No. 316 West Seventh street, Cincinnati, Ohio, (which said property is more particularly described in the deeds, copies of which are hereto attached as exhibits) to be used as a parsonage for said church.

This deed contained the following condition:

"Provided, and this conveyance is on these express conditions, that the said trustees and their successors shall promptly pay all taxes and assessments which shall be levied on said premises, and that the membership of the said Vine Street Congregational Church, shall remain and continue in the Orthodox faith as at present recognized, and in conformity with the standard doctrines of the Congregational Church as they are now established and taught; and if at any time the said premises shall by reason of non-payment of taxes or assessments which may be levied on the same be advertised for sale in the delinquent tax list, or whenever the said membership of the said Vine street church shall cease to be Orthodox in the faith and cease to be in unison with the doctrines and belief of the Congregational Church as at this time usually received, then and in either event the said premises shall revert to the grantor and his heirs, and the grants herein made to the said trustees of said church shall cease and determine."

The said Vine Street Congregational Church on the 10th of April, 1876, accepted the said gift by the following resolution:

"Whereas Brother Osman Sellew has presented to the Vine Street Congregational Church a beautiful residence No. 316 West Seventh street, between Mound and John streets, Cincinati, Ohio, and conveyed the same

to the trustees of the church, by deed in fee simple, to be used as a parsonage, therefore resolved, that we, the board of trustees, on behalf of the church gratefully accept the gift of our generous brother on the terms and conditions set forth in said deed."

That on or about the tenth day of February, 1886, Mr. Osman Sellew, together with the trustees of said church, made a quit-claim deed to the said church of the said property, this deed being given for the purpose of releasing the conditions embodied in the former deed.

This deed was placed in the hands of Attorney A. C. Shattuck to be delivered to said church upon the passage by said church of the following resolution which was passed on March 1st, 1886:

"Monday evening, March 1st, 1886.

"Members present: Williams, Walton, Page, Meininger, Huntington, and Hoff.

"Minutes of previous meeting read and approved.

"The memorial of Mr. Sellew in regard to the management and disposition of the parsonage or any fund that may be derived from its sale was the order of business; a copy of which in the form of a resolution for adoption by the trustees, for the instruction not only of the present but any future board of trustees is here inscribed:

"Whereas Osman Sellew has executed a quit-claim deed to the Central Congregational Church of Cincinnati, Ohio, to the premises known as No. 316 West Seventh street, Cincinnati, Ohio, and has placed the same in the hands of A. C. Shattuck, attorney, to be delivered when the trustees of said church, for the said church shall pass the following resolution, Now therefore be it by us, the trustees of the Central Congregational Church of Cincinnati, Ohio, for the said church.

"Resolved that we agree with the said Osman Sellew in consideration of the before mentioned quit-claim deed, in case it shall be deemed best at any time in future to sell said premises that the proceeds arising from such sale shall not be used for the purpose of liquidating the debts of the church,

nor for the construction, repair, or re modeling the present or any other church edifice; but the same shall be either re-invested in cther property or securities, the income therefrcm, to be used for the benefit of said church, as the trustees thereof may think best. It being the purpose of this agreement to secure and preserve the principal of this gift from Osman Sellew intact, and to provide that the income only arising from the same may and shall be used for the said church, and on failure of the trustees of said church to faithfully carry out and abide by the agreement above, tne proceeds arising from the sale cf said premises without interest, and less any 'losses that may have occurred from poor investments, shall revert to the grantor or his legal heirs.

"And it is further agreed that nothing herein contained shall in any sense or manner render the trustees of the Central Congregationa Church or its successor personally liable for any failure to carry out the above agreement."

That upcn the passage of said resolution Attorney A. C. Shattuck delivered said quit-claim deed to the said church as directed.

That on April 1st, 1890, the said church leased the premises above described to Mrs. Margaret Lovie for the period of ninety-nine years renewable forever. Among other covenants in the lease the following are pertinent to the questions raised here.

"The said lessee, her heirs, executors, administrators and assigns, yielding and paying therefor yearly and every year during this demise the sum of seven hundred and eighty dollars, and payable in twelve equal monthly installments on the first day cf each calendar month, the said yearly sum to be reduced from time to time in proportion to the amount that may be paid on account of the purchase of said premises, for which provision is hereinafter made."

"And the said lessor for itself and for its successors and assigns, further covenants and agrees by and with the said lessee, her heirs and assigns, that all rents, taxes and assessments being paid and all covenants being performed by said lessee as herein stipulated, said lessor will at any time during the continuance of this lease convey the said premises to said lessee, her heirs and assigns, by a good and sufficient deed of general warranty upon the payment to it by said lessee, her heirs or assigns, the sum cf thirteen thousand dcllars, the same to be paid in the following manner, viz: Annual payments of not less than five hundred dollars, each to be made by the lessee, or her assigns, for ten years, and the remaining eight thousand dollars nr so much thereof as remains unpaid at the end of ten years after the exe:ution of said lease to be paid at any time at the option of the lessee or her assigns."

That according to the provisions of said lease Mrs. Lovie paid as purchase money two five hundred dollars installments (this being the one thousand dollars in controversy in this matter). Having kept the remaining conditions of said lease until cn cr about the sixth day of December, 1897, the church took back said property and released her from her obligations under the lease, and she quitclaimed to said church all her right, title and interest in said property.

It is further agreed that Mrs. Lovie never paid as purchase money, as provided in said lease, but the one thousand dollars ($1,000.00) above mentioned.

That this one thousand dollars has been loaued out by the trustees ever since it was received by them, and cnly the interest used by the church, until on or about the thirteenth cf July, 1898, when the church by resolution ordered the same collected and to be used by the board of trustees for current expenses of the church.

That this one thousand dcllars, according to said resclution was collected and is now in the treasury cf the church.

That the church owes Rev. H. S. Bigelow, its pastor, about eight hundred ($800.00) dollars, and it is the intention to pay him all or part of his salary now past due.

That the board of trustees has

ordered the treasurer of the church, George W. Ingels, Jr., to pay about $800.00 to Rev. H. S. Bigelow, pastor, and he declines to do so, because the church has no right to use this fund for current expenses.

That the treasurer has been notified by certain members of the said society or congregation that if he pay the said pastor out of the said one thousand dollars, or pay any other current expenses of the said church out of the said one thousand dollars, they will hold him responsible upon his bond; and the treasurer, not desiring to assume any responsibility, has refused and still refuses to use the said one thousand dollars to pay the said pastor or any of the current expenses of the said church, until this question has been passed upon by the court.

We, therefore, submit to the court the question: "Can this one thousand dollars be rightfully used to pay the current expenses of the church, including the pastor's salary?"

(Signed):

"Geo. W. Ingels, Treasurer, and Trustee of Vine Street Congregational Church; Louis G. Siebel, Trustee; Homer Morris, Chairman of the Board of Trustees; Samuel Beresford, Trustee; Edward J. Farbach, Trustee; Herbert S. Bigelow, Pastor."

The decision of this matter depends upon the construction of the resolution of the church passed March 1. 1896, in which they accepted the quitclaim deed of Mr. Sellew. If the $1,000.00 is "principal" within the meaning of that resolution, then it must remain intact; but if it is "income" within the meaning of such resolution, then it may be expended for the current expenses of the church including the salary of its pastor.

The proposition seems to me indisputable that when Mrs. Lovie made the two payments of $500.00 each, and before she abandoned the lease, Mr. Sellew acquired what might be termed a reversionary interest in the money for the reason that by the resolution of acceptance if at any time the trustees of the church failed to faithfully carry out the agreement as evidenced by the resolution the prop-

erty or the proceeds arising from a sale were to revert to Mr. Sellew.

Such being the case, it is pertinent to inquire—How could Mr. Sellew be deprived of this right as between him and the church by any act of the would-be purchaser?

The only argument to support the contention that such a change was effected by the failure to complete the purchase is that "the proceeds arising from such sale" means the proceeds arising from a completed sale which transfers the title of the real estate from the church to the purchaser.

But is the $1,000.00 any the less "proceeds arising from sale" because the sale was not completed; and if subsequently the property is sold for say $13,000.00 to another purchaser, will not the church then have in its hands $14,000.00 as "proceeds arising from" sales of the property?

The mind experiences some difficulty at first in reconciling the fact that the church still owns the property with the fact that the $1,000.00 is to be regarded as "proceeds arising from the sale" of the property; yet, a case may be supposed where these facts might co-exist and yet no doubt be entertained that both property and money were to be regarded as principal. Thus, suppose the church should sell the property for $13,000.00, $1,000.00 cash and the balance $12,000.00 secured by mortgage, default in the payment of the mortgage, foreclosure of the mortgage and the church compelled to buy in the property at judicial sale in order to protect its claim. In such a case there would be no doubt that both the property and the $1,000.00 payment would constitute the "principal". Thus it is seen that the argument is not sound which insists that the $1,000.00 cannot be regarded as principal because the property is still owned by the church.

The latter part of the resolution of acceptance contains this language: "And on failure of the trustees of said church to faithfully carry out and abide by the agreement above the proceeds arising from the sale of said premises without interest and less any

losses that may have occurred from poor investments shall revert to the grantor or his legal heirs."

If the grantor is to bear all the loss that results to the principal from a poor investment, he certainly is entitled to whatever gain accrues from a good investment; and if he is to suffer a loss from a poor investment, necessarily he would have to bear a loss from an attempt to invest it: and if he is entitled to whatever gain accrues from a good investment, is he not also entitled to whatever gain accrues from an attempt to make a good investment—and therefore entitled to the $1,000.00 in this matter?

It is probably true that the contingency which has arisen here was not in the minds of the parties at the time the agreement with respect to the property was entered into. If such is the case, and the line of reasoning adopted herein, proceeding from the well-known intention of the parties on certain matters designated in the agreement to those not so mentioned, but kindred in character, is not satisfactory, and we are obliged to place the decision upon the ordinary principles of justice between the parties, which must under such circumstances become the principles of equity, can any fairer appointment of this gain of $1,000.00 be made than to regard it as principal to revert to the grantor if the principal ever reverts, the income on the same until reversion to belong to the church? It seems to me no fairer appointment of it can be made.

It is true that no case similar to this has been discovered by counsel on either side, yet there are cases somewhat analogous to this which are pertinent to the inquiry at bar. In the matter of Lawrence's Estate, 7 N. Y., Supplement, 337, certain securities were given in trust with directions to pay the income to a life beneficiary. The securities were subsequently sold at a profit. It was held error to credit the profit to the income account, as it was a gain to the principal to which it should be added to go eventually to the one entitled to the corpus.

In Van Blarcom v. Dager, 31 N. J. Eq., 783, it was held as between the life tenant and the remainderman, that the premium upon certain gold coin belonging to the testator's estate was part of the corpus and not of the income.

In Parker v. Johnson, 37 N. J. Eq., 360, a trustee purchased certain lands at a foreclosure sale of his mortgage thereon. He afterwards sold them and realized about $1,700.00 above the amount of the original loan besides interest and costs. Held: That this surplus was not payable to the life tenant of the trust fund, but should be held by the trustee as part of the corpus, or to meet any future losses on investment, if they should occur.

See, also, that large class of cases in which it is held that stock dividends declared by corporations belong to the trust estate, and not to the person entitled to the income.

After a careful consideration of this case, during which I confess not always to have been of the same opinion, I have finally reached the conclusion that the $1,000.00 involved here must be regarded as "principal" and not "income", and therefore not applicable to the payment of current expenses.

Sherman T. McPherson, on behalf of the claim that the $1,000.00 is to be regarded as "income."

Closs & Luebbert, contra.